# 23-916-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

WILLIAM E. BARONI, JR.,

*Plaintiff-Appellant*,

*v.*

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Southern District of New York, No. 1:21-cv-05961
Before the Honorable Laura Taylor Swain

**BRIEF FOR DEFENDANT-APPELLEE**

PETER G. NEIMAN
ANJAN S. SAHNI
ALAN SCHOENFELD
MARISSA M. WENZEL
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY
(212) 230-8800

September 18, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..............................................................................1

STATEMENT OF FACTS ...................................................................3

    A.    Historical And Statutory Background ....................................3

    B.    Factual Background....................................................................9

    C.    Rulings On Review ...............................................................16

SUMMARY OF ARGUMENT ...........................................................20

ARGUMENT ...................................................................................22

I.    THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION
    OVER BARONI'S NONCOMPLIANT INDEMNIFICATION CLAIMS .....................22

    A.    Paragraph 8 Applies To All Benefits Under Article XI......................23

    B.    Article XI Cannot Be Read To Diminish Sovereign
        Immunity ...............................................................................30

    C.    Baroni Was Required To Plead Compliance With The
        By-Laws ...............................................................................32

II.    BARONI'S PROPOSED AMENDMENT DID NOT CURE THE
    JURISDICTIONAL DEFICIENCY AND THE DISTRICT COURT
    PROPERLY DENIED BARONI'S MOTION TO AMEND .........................39

    A.    Baroni's Post-Judgment Motion Did Not Satisfy Rules
        59 Or 60 ...............................................................................40

    B.    Baroni's Proposed Amendments Were Futile....................................42

III.    BARONI'S SCATTERSHOT EXCUSES FOR NONCOMPLIANCE ARE
    MERITLESS ...............................................................................47

    A.    Waivers Of Sovereign Immunity Are Strictly Enforced....................48

B.    The Port Authority Did Not Waive The Requirement For Notice Under The By-Laws ..................................................................50

C.    The Port Authority, As A Government Agency, Cannot Be Estopped From Bringing Claims Of Non-Compliance .................53

IV.   THE DISTRICT COURT SHOULD NOT HAVE REMANDED BARONI'S STATE-LAW CLAIMS...........................................................................56

CONCLUSION ......................................................................................57

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669 (2d Cir. 1997) ......................31

*Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193
    (2d Cir. 2016)..........................................................................................42

*Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35 (2d Cir. 2020) ....................39

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao
    S.A.*, 849 F. App'x 289 (2d Cir. 2021) ...........................................................47

*Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015)............................................38, 39

*Belpasso v. Port Authority of New York & New Jersey*,
    959 N.Y.S.2d 442 (App. Div. 2013*)*............................................................32

*Board of Education of Wildwood v. Richmond Construction Co.*,
    105 A. 220 496 (N.J. 1918) ......................................................................34

*Broidy Capital Managment LLC v. Benomar*, 944 F.3d 436
    (2d Cir. 2019)..........................................................................................42

*Brown v. State*, 674 N.E.2d 1129 (N.Y. 1996) ........................................................38

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008)....................41

*Caceres v. Port Authority of New York & New Jersey*, 631 F.3d 620
    (2d Cir. 2011)......................................................................................32, 33

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)................................10

*City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708
    (2d Cir. 1960)..........................................................................................48

*Cody, Inc. v. Town of Woodbury*, 179 F.3d 52 (2d Cir. 1999) ................................39

*Deutsche Bank National Trust Company ex rel. Trustee for
    Harborview Mortgage Loan Trust v. Flagstar Capital Markets
    Corp.*, 112 N.E.3d 1219 (N.Y. 2018) ......................................................33, 36

*Diamond Phone Card, Inc. v. United States*, 206 F. Supp. 3d 766
(E.D.N.Y. 2016)............................................................................54

*Dreger v. New York State Thruway Authority*, 609 N.E.2d 111
(N.Y. 1992)..................................................................................32

*Drobner v. Bruce*, 531 F. App'x 96 (2d Cir. 2013) ...................................43

*Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476
(2d Cir. 2008)..............................................................................39

*Fabozzi v. Lexington Insurance Co.*, 601 F.3d 88 (2d Cir. 2010) ..............20, 32, 33

*Fahs Construction Group, Inc. v. State*, 999 N.Y.S.2d 244
(App. Div. 2014)..........................................................................36

*Ferreira v. Rancocas Orthopedic Associates*, 836 A.2d 779
(N.J. 2003) .................................................................................49

*Field Day, LLC v. County of Suffolk*, 799 F. Supp. 2d 186
(E.D.N.Y. 2011)...........................................................................54

*Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006) ...........................24

*Goureau v. Lemonis*, 2021 WL 5909742 (S.D.N.Y. Dec. 14, 2021) ......................40

*Hall-Kimbrell Environmental Services Inc. v. East Ramapo Central
School District*, 580 N.Y.S.2d 564 (App. Div. 1992) ...........................50, 51

*Hassoun v. Searls*, 976 F.3d 121 (2d Cir. 2020)........................................57

*Heckler v. Community Health Services of Crawford County, Inc.*,
467 U.S. 51 (1984)...................................................................53, 54

*Henry Boeckmann, Jr. & Associates, Inc. v. Board of Education,
Hempstead Union Free School District No. 1*,
616 N.Y.S.2d 395 (App. Div. 1994)..............................................55

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994) .........................38

*In re World Trade Center Disaster Site Litigation*, 521 F.3d 169
(2d Cir. 2008)..............................................................................38

*Janese v. Fay*, 692 F.3d 221 (2d Cir. 2012)...........................................39

*John J. Kassner & Company v. City of New York*, 389 N.E.2d 99
  (N.Y. 1979) ............................................................... 33, 36

*Kaufman v. Allstate New Jersey Insurance Co.*, 561 F.3d 144
  (3d Cir. 2009) .................................................................. 24

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
  274 F.3d 706 (2d Cir. 2001) ........................................... 55

*Kyne v. Carl Beiber Bus Services*, 147 F. Supp. 2d 215
  (S.D.N.Y. 2001) ................................................................ 5

*Lake v. New York City Employees' Retirement System*,
  163 N.Y.S.3d 143 (App. Div. 2022) ............................... 53

*Lebron v. Sanchez*, 970 A.2d 399 (N.J. Super. Ct. App. Div. 2009) ...................... 49

*Lowe v. Zarghami*, 731 A.2d 14 (N.J. 1999) .......................................... 49

*Lucente v. International Business Machines Corp.*, 310 F.3d 243
  (2d Cir. 2002) .................................................................. 43

*Luciano v. Fanberg Realty Co.*, 475 N.Y.S.2d 854 (App. Div. 1984) ................... 32

*Lyons v. Port Authority of New York & New Jersey*, 643 N.Y.S.2d 571
  (App. Div. 1996) ............................................................. 48

*Malmberg v. United States*, 816 F.3d 185 (2d Cir. 2016) ........................... 48

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ................. 26

*McNeil v. United States*, 508 U.S. 106 (1993) .......................................... 37

*Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020) ............................... 39, 40, 42

*MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43
  (N.Y. 2009) ..................................................................... 49

*Morrison v. Buffalo Board of Education*, 741 F. App'x 827
  (2d Cir. 2018) .................................................................. 51

*Morrison v. National Australia Bank Ltd.*, 547 F.3d 167
  (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ..................... 34

*National Petrochemical Company of Iran v. M/T Stolt Sheaf*,
930 F.2d 240 (2d Cir. 1991) ..........................................................39

*New York State Nurses Association Benefits Fund ex rel. Buchanan v. Nyack Hospital*, 46 F.4th 97 (2d Cir. 2022) ..................................24

*OPM v. Richmond*, 496 U.S. 414 (1990) .......................................54

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101
(2d Cir. 2008)..............................................................................26

*Patel v. Port Authority of New York & New Jersey*, 586 N.Y.S.2d 747
(App. Div. 1992)..........................................................................32

*Piesco v. City of New York*, 650 F. Supp. 896 (S.D.N.Y. 1987) ...........37

*Providence Engineering Corp. v. Downey Shipbuilding Corp.*,
294 F. 641 (2d Cir. 1923) ...........................................................54

*Racich v. Celotex Corp.*, 887 F.2d 393 (2d Cir. 1989) .........................28

*Rao v. Port of New York Authority*, 122 F. Supp. 595
(E.D.N.Y. 1954), *aff'd*, 222 F.2d 362 (2d Cir. 1955)...................48

*Reich v. Valley National Bank of Arizona*, 837 F. Supp. 1259
(S.D.N.Y. 1993)...........................................................................54

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) ...................41

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91
(2d Cir. 1997)..............................................................................26

*Schwartz v. HSBC Bank USA, N.A.*, 2017 WL 2634180
(S.D.N.Y. June 19, 2017), *aff'd*, 750 F. App'x 34
(2d Cir. 2018)..............................................................................40

*Schweiker v. Hansen*, 450 U.S. 785 (1981) ......................................54

*Shibeshi v. City University of New York*, 2012 WL 12884419
(S.D.N.Y. Mar. 1, 2012), *aff'd*, 531 F. App'x 135
(2d Cir. 2013)..............................................................................57

*Singh v. American Honda Finance Corp.*, 925 F.3d 1053
(9th Cir. 2019) ............................................................................25

*Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) ........................................38

*State v. United Parcel Service, Inc.*, 253 F. Supp. 3d 583
　(S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019)....................................52

*Stebbins v. Polano*, 2022 WL 2668371 (N.D. Cal. July 11, 2022) ........................27

*Trippe v. Port of New York Authority*, 198 N.E.2d 585 (N.Y. 1964)........................5

*United Commodities-Greece v. Fidelity International Bank*,
　473 N.Y.S.2d 10 (App. Div. 1984), *aff'd*, 478 N.E.2d 172
　(1985).........................................................................................52

*United States v. Baroni*, 909 F.3d 550 (3d Cir. 2018),
　*rev'd & remanded sub nom. Kelly v. United States*,
　140 S.Ct. 1565 (2020)......................................................................11

*Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967) .................................40

*Woods v. Standard Insurance Co.*, 771 F.3d 1257 (10th Cir. 2014) .......................24

*Zabar v. New York City Department of Education*, 2020 WL 2423450
　(S.D.N.Y. May 12, 2020) ...............................................................14

## CONSTITUTIONS, STATUTES, AND RULES

U.S. Const. art. I, §10....................................................................................4

42 Stat. 174 (1921)...................................................................................4, 53

N.J.S.A.
　§32:1-6 ....................................................................................................6
　§32:1-25 ..................................................................................................4
　§32:1-157 ................................................................................................5
　§32:1-163 ............................................ 5, 16, 20, 30, 31, 33, 35, 54

N.Y. C.P.L.R. 203 ........................................................................................36

N.Y. Unconsol. Law
　§6406.......................................................................................................6
　§6451.......................................................................................................4
　§7101.......................................................................................................5
　§7107 ................................................ 16, 20, 30, 31, 33, 35, 54

Fed. R. Civ. P.
  Rule 9 ................................................................................... 34
  Rule 12 ................................................................................. 21
  Rule 15 ................................................................................. 39
  Rule 59 .................................................... 22, 39, 40, 41, 42, 43
  Rule 60 ........................................................ 22, 39, 40, 42, 43

Fed. R. Crim. P. 49 ................................................................. 29

## OTHER AUTHORITIES

Individual Rules of Practice in Civil Cases, Honorable Mary Kay
  Vyskocil (S.D.N.Y. June 1, 2023) .......................................... 13, 14

MSNBC, *The Beat w/ Ari Melber (Transcript)* (May 14, 2020),
  https://tinyurl.com/2rabp39x ............................................... 45

Port Authority NY & NJ, Portfolio, *Port Authority: 95th Anniversary
  of the Port Compact of 1921* (2016), https://tinyurl.com/
  46tjha9a .......................................................................... 3, 4

Wright, Charles A. & Arthur R. Miller, *Federal Practice & Procedure*
  (4th ed. 2023) ................................................................... 35

**INTRODUCTION**

While a senior official at the Port Authority of New York and New Jersey, William Baroni maliciously ground traffic to a halt on the world's busiest bridge, jeopardizing public safety to retaliate against a political foe—a course of conduct the Supreme Court described as "deception, corruption, [and] abuse of power." He was investigated, prosecuted, and convicted of fraud. In May 2020, the Supreme Court reversed his conviction on narrow grounds, finding that his "wrongdoing" fell outside the reach of the federal fraud statutes because it was a misappropriation of the Port Authority's regulatory authority, rather than its property. In September 2020, Baroni demanded that the Port Authority—the agency whose regulatory authority he fraudulently misappropriated—foot the bill for more than $4 million in legal fees. Baroni cited a provision of Article XI of the Port Authority's By-Laws that makes indemnification mandatory after an acquittal, so long as the charged conduct was within the scope of the officer's duties. Deception and corruption are hardly within the scope of a public officer's duties. The Port Authority declined to pay, and Baroni sued.

As a public entity, the Port Authority has sovereign immunity. While New York and New Jersey have enacted statutes waiving that immunity for claims brought "within one year after" accrual, those statutes do not apply here. As the district court properly held, Baroni's claim never accrued, because he failed to

comply with the strict notice requirements of the Port Authority's By-Laws. Those By-Laws required him—a former officer seeking post-acquittal reimbursement of legal fees—to deliver notice "within five days" of the entry of judgment of acquittal, a deadline Baroni missed by three months. The Port Authority's immunity therefore remains intact. Accordingly, the district court dismissed Baroni's complaint, with prejudice.

On appeal, Baroni offers various misreadings of both the Port Authority's By-Laws and the statutes governing the Port Authority's sovereign immunity waiver. None comes close to holding water. For example, he claims that the notice requirement does not apply to requests for post-acquittal indemnification. The plain language of the By-Laws is squarely to the contrary, making the notice requirement applicable to "[t]he benefits of *this Article XI*," the very Article Baroni invokes. He also claims that, if the requirement applied to him, he met it when he advised the Port Authority of an investigation five years before his eventual acquittal. But Baroni then was seeking advancement of fees, which a different clause of the By-Laws makes discretionary, and which the Port Authority did not provide. Nothing about that preliminary request under a different clause, more than a year before he was even *indicted*, satisfied Baroni's obligation to notify the Port Authority promptly—post-*acquittal*—that he demanded repayment of defense costs already incurred. Baroni also argues that the Port Authority's sovereign

immunity waiver extends to claims filed *before* they accrue. But that requires ignoring the plain language of the waiver statute, which limits waiver to claims filed "within one year *after*" accrual.

Underlying all of Baroni's tortured arguments is the suggestion that there is something unfair about applying the strict notice requirement. Just the opposite is true. Baroni is seeking extraordinary relief: to compel the Port Authority to spend millions of dollars entrusted to it for public use to reimburse the costs of an executive whose proven deception, corruption, and abuse of power undermined the Port Authority's mission. In this context, it is entirely proper to insist that Baroni turn square corners. Baroni did not do so, and the district court's dismissal should be affirmed.

## STATEMENT OF FACTS

### A. Historical And Statutory Background

In the early 1900s, the States of New York and New Jersey bickered over their boundaries. Port Authority NY & NJ, Portfolio, *Port Authority: 95th Anniversary of the Port Compact of 1921* (2016), https://tinyurl.com/46tjha9a ("Portfolio"). Congestion in the adjoining harbor was a hassle, compounded by jurisdictional tussles. *Id.* Trade suffered. *Id.* But everything changed when state leaders, in the aftermath of World War I, took a fresh look at the port and saw potential. *Id.* A bi-state agency, endowed with cooperative power of joint

government, could transform the region into a center for commerce and unify the interests of each sovereign. On April 13, 1921, the States pledged "faithful cooperation in the future planning and development of the port of New York," and created "the port of New York authority, a body politic and corporate, as an instrumentality or agency of the two states to effectuate such pledge of cooperation." N.Y. Unconsol. Law §6451; N.J.S.A. §32:1-25. That moment lay the foundation for pathbreaking infrastructure governance in the region. And the interstate compact gained constitutional significance when Congress authorized it pursuant to Article I, Section 10 of the United States Constitution (the Compact Clause). *See* 42 Stat. 174, 177 (1921).

In the years to come, the Port Authority of New York and New Jersey would expand well beyond the harbor, innovating to meet the progress of society. *See* Portfolio; *see also* JA231 ¶ 9. Feats of civil engineering, such as the Lincoln Tunnel and the George Washington Bridge, credit the Port Authority for their development. *Id.* After World War II, the Port Authority stretched skyward, establishing some of the busiest airports in the nation. *Id.* Back on the ground, the Port Authority constructed the largest bus terminal in the world. *Id.* Few people, even of those who travel regularly over the Port Authority's byways, realize the immeasurable transformation the Port Authority's governance has effected over the New York and New Jersey region.

At its origin, the Port Authority was "completely immune from suits of any sort." *Trippe v. Port of N.Y. Auth.*, 198 N.E.2d 585, 586 (N.Y. 1964); *see Kyne v. Carl Beiber Bus Servs.*, 147 F. Supp. 2d 215, 218 (S.D.N.Y. 2001) ("Prior to the enactment of the Suability Statute, the Port Authority was immune from suit."). In 1951, however, New York and New Jersey passed identical legislation that waived the Port Authority's sovereign immunity subject to certain conditions, which rendered the Port Authority susceptible to litigation only to the limited extent that those conditions were satisfied:

> [T]he States of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise (including proceedings to enforce arbitration agreements) against the Port [Authority], and to appeals therefrom and reviews thereof, *except as hereinafter provided*[.]

N.Y. Unconsol. Law §7101 (emphasis added); N.J.S.A. §32:1-157 (emphasis added). One of those conditions was, and is, as follows:

> The foregoing consent is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued[.]

N.Y. Unconsol. Law §7107; N.J.S.A. §32:1-163. Absent compliance with that condition, the Port Authority's sovereign immunity remains intact and it is protected from suit.

Like any prudent government body, the Port Authority determined, early on, that it needed rules and procedures to govern its administration. For that reason,

the Port Authority's founding document specified that the agency may "adopt suitable by-laws" for its "management."  N.Y. Unconsol. Law §6406; N.J.S.A. §32:1-6.  As contemplated, the Port Authority duly adopted comprehensive and detailed By-Laws covering topics ranging from the duties of Port Authority officers to an open meetings policy to financial auditing procedures.

Article XI of the By-Laws is called "Defense and Indemnification of Individuals."  JA71.  It contains various provisions addressing mandatory, discretionary, ex ante, and ex post obligations in certain criminal and civil contexts.  The section begins, under Paragraph 1, by defining the terms that appear in "this Article XI":

> As used in *this Article XI*, the term "indemnified party" shall mean an individual who is a Commissioner, officer, or employee of the Port Authority.  The terms "Commissioner," "officer," and "employee" shall include a former Commissioner, officer, and employee[.]

JA71 ¶ 1 (emphasis added).  Paragraph 2 turns to a mandatory defense obligation. It requires that, "[u]pon compliance by an indemnified party with the provisions of paragraph 8 of this Article XI, the Port Authority shall provide for the defense of the indemnified party in any civil action or proceeding in any state or federal court" arising out of acts or omissions within the individual's scope of employment.  JA71 ¶ 2.  Paragraph 3 starts with default judgments, stating: "Where an individual seeking indemnification delivers process and a request for a defense to General Counsel as required by paragraph 8 of this Article XI, General

- 6 -

Counsel shall take the necessary steps on behalf of the individual in order to avoid entry of a default judgment pending resolution of any question pertaining to the determination to provide for a defense." JA71 ¶ 3. It also requires the General Counsel to "represent" or "assign outside counsel" to an individual under certain circumstances. *Id.* Under Paragraph 4, Article XI requires the Port Authority to "identify and save harmless an indemnified party" for judgments or settlements where the underlying act or omission arose within the scope of the indemnified party's employment and there was no intentional wrongdoing. JA71 ¶ 4. Paragraph 5 specifies that "[a]ny proposed settlement or final judgment which may be subject to indemnification or payment[,] … if not inconsistent with the provisions of this Article XI, shall, as applicable, be authorized for payment in accordance with the provisions of these By-Laws" subject to a certain determination by the Port Authority's General Counsel. JA71-72 ¶ 5. It continues, "Nothing in this Article XI shall be construed to authorize the Port Authority to indemnify and save harmless or pay an indemnified party with respect to a settlement not so reviewed and approved by General Counsel." *Id.* With an exception, Paragraph 6 establishes that "[n]othing in this Article XI shall require the Port Authority to indemnify or save harmless an indemnified party with respect to fines or penalties." JA72 ¶ 6.

Paragraph 7 is particularly relevant here. It provides for discretionary and mandatory reimbursement in certain criminal and civil cases. On the discretionary side, Paragraph 7 states that the Port Authority "may, consistent with applicable law, provide for a defense when punitive damages are sought *or* criminal charges are asserted," subject to certain requirements. JA72 ¶ 7 (emphasis added). But the Port Authority "shall provide reimbursement of defense costs incurred by or on behalf of an indemnified party in defense of a criminal proceeding" arising from an act or omission within the individual's scope of employment "upon acquittal or dismissal of the criminal charges." *Id.*

Paragraph 8 sets out the notice requirements applicable to the entirety of Article XI:

> The benefits of *this Article XI* shall be conditioned upon (i) delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the party seeking indemnification that the Port Authority provide for defense pursuant to this Article XI; (ii) the full cooperation of the indemnified party in the defense of such action or proceeding and in defense of any action or proceeding against the Port Authority based upon the same act or omission, and in the prosecution of any appeal; and (iii) the agreement of the indemnified party that the Port Authority shall be entitled to withdraw such defense and demand reimbursement from such party for costs incurred in connection with such defense in the event that, upon further discovery, indemnification is not required or otherwise warranted under this Article XI.

JA72 ¶ 8 (emphasis added).

Paragraph 9 underscores certain limitations on the operation of "this Article XI"—that its benefits "shall inure only to an indemnified party as defined herein," that it "shall not in any way affect the obligation of any claimant to give any notice otherwise required by any provision of law," and that it "shall not be construed to impair, alter, limit, or modify" insurance arrangements.  JA72-73 ¶ 9.  Paragraph 10 separately emphasizes that Article XI must not be applied to, in any way, diminish the Port Authority's immunity:

> Except as otherwise specifically provided herein, the provisions of this Article XI shall not be construed in any way to impair, alter, limit, modify, abrogate, or restrict any immunity available to or conferred upon any unit, entity, Commissioner, officer, or employee of the Port Authority, or any right to defense and/or indemnification provided for any governmental officer or employee by, in accordance with, or by reason of, any other provision of state or federal statutory or common law.

JA73 ¶ 10.  Finally, Paragraph 11 authorizes the Executive Director of the Port Authority to "publish such rules and regulations as are necessary to effectuate the purposes of this Article XI."  JA73 ¶ 11.

### B.    Factual Background

Baroni was Deputy Executive Director of the Port Authority from March 1, 2010 until December 13, 2013.  JA22 ¶ 7.  "For four days in September 2013," Baroni made traffic near the George Washington Bridge, the busiest bridge in the

world, grind "to a halt." JA35.[1]  He crafted this result by reconfiguring a decades-

old lane arrangement, such that drivers who tried to cross the Bridge for their

morning commutes would be backed up "to a standstill."  JA41; *see* JA24 ¶ 16

("the bottleneck at the single special access lane from Fort Lee caused traffic to

back up into the town, creating severe traffic").  The congestion "rivaled that of

9/11, when the George Washington Bridge had shut down."  JA41.

Panic ensued, and the mayor of nearby Fort Lee repeatedly tried to connect

with Baroni to address the "urgent matter of public safety."  JA41.  Baroni ignored

his calls, "merrily" keeping "the lane realignment in place."  JA42.  Baroni's plan

was to maintain "radio silence" as peril kept mounting.  JA41.  All of this was

designed to "punish" the mayor of Fort Lee for declining to make a political

endorsement.  JA37.

"[P]redictable consequences" followed, endangering countless people.

JA37.  Police "had trouble responding to a report of a missing child" and an

ambulance "struggled to reach the victim of a heart attack."  JA41.  "School

buses," which were "locked-in," "stood in place for hours."  *Id*.  Baroni prolonged

the chaos for "another three days."  *Id*.  The episode only ended when the Port

---

[1]     Baroni appended the Supreme Court's opinion to his complaint as an
exhibit; thus, the opinion is part of his pleading.  *See Chambers v. Time Warner,
Inc*., 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any
written instrument attached to it as an exhibit").

Authority's Executive Director "found out what had happened" and "reversed" the "abusive decision." JA42. Baroni and his collaborators invented the "lie" that the realignment "was part of a traffic study." JA44.

The United States Attorney for the District of New Jersey sought to hold Baroni criminally responsible for his actions. *See* JA24 ¶ 18. On April 23, 2015, the grand jury indicted Baroni on nine counts of fraud, conspiracy to commit fraud, deprivation of civil rights, and conspiracy to commit deprivation of civil rights. JA24 ¶ 19. The government's theory was that Baroni and his co-conspirators had fraudulently misappropriated government property by using Port Authority resources to cover up their traffic jam. JA44. Following trial, a jury found Baroni guilty on all counts and the United States Court of Appeals for the Third Circuit affirmed the fraud charges. *See* JA24-25 ¶¶ 19-21.[2] Baroni appealed.

Concluding that Baroni had misappropriated government regulatory authority rather than property, the United States Supreme Court reversed the fraud convictions. JA46. The Court had "no doubt" the evidence showed "wrongdoing—deception, corruption, abuse of power," and that Baroni engaged in a "corrupt act" for "no reason other than political payback." JA38,

---

[2] Based on the uncertain constitutional status of a right to intrastate travel, the Third Circuit reversed and vacated Baroni's civil rights convictions. *See United States v. Baroni*, 909 F.3d 550, 588 (3d Cir. 2018), *rev'd & remanded sub nom. Kelly*, 140 S.Ct. 1565.

JA48-49.  But, as the Court explained, "not every corrupt act by state or local officials is a federal crime."  JA49.  On June 11, 2020, the district court entered judgment of acquittal in Baroni's favor.  JA21 ¶ 3; JA26 ¶ 27; JA264-265.

On September 25, 2020—more than three months after the district court's entry of the judgment of acquittal—Baroni requested that the Port Authority pay all costs he had incurred in defending the criminal case, invoking Article XI of the By-Laws.  JA28 ¶ 35.  The Port Authority denied Baroni's request on October 23, 2020.  JA28 ¶ 36.  On June 9, 2021, Baroni filed this action.  JA33.

Baroni's complaint alleged that, "[u]pon the district court's dismissal of the charges against him, Mr. Baroni became entitled under the Port Authority's by-laws to reimbursement by the Port Authority of the defense costs incurred by him and on his behalf in successfully defending against the criminal charges."  JA26 ¶ 28.  Baroni asserted that "[a]n 'indemnified party' is defined in Paragraph 1 of Article XI as 'an individual who is a Commissioner, officer, or employee of the Port Authority,'" including a "'former'" one like him.  JA27 ¶ 31.  He explained that it took him "more than six years, and thousands of hours of attorney time," not to mention "more than a dozen different law firms," to achieve acquittal.  JA27 ¶ 33; JA28 ¶ 35.  Describing his process for "making a claim under Article XI of the By-Laws," Baroni alleged as follows:

> On September 25, 2020, Mr. Baroni, by and through his attorneys, sent a letter to the Port Authority making a claim under Article XI of

the By-Laws for reimbursement of the costs incurred in the course of the work performed by all of the involved attorneys.

JA28 ¶ 35.

In district court, Baroni's case was originally assigned to Judge Mary Kay Vyskocil, whose Individual Rules of Practice in Civil Cases require that any party intending to file a motion to dismiss submits "a letter … briefly describing the motion that is contemplated and summarizing the grounds for the proposed motion, and whether the motion is on consent of all parties." Individual Rules of Practice in Civil Cases, Honorable Mary Kay Vyskocil §4(A)(i) ("Judge Vyskocil's Individual Rules"). The opposing party must then "file a letter setting forth its position." *Id.*

In its pre-motion letter, the Port Authority explained that any right to indemnification under Article XI of the By-Laws is conditioned on "delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document." JA90. The letter detailed how "Baroni does not plead that he complied with [that] mandatory condition":

> To the contrary, the complaint alleges only that he demanded indemnification under Article XI on September 25, 2020, more than three months after the district court's order of June 11, 2020 that vacated the judgment of conviction. Compl. ¶¶ 27, 35. His indemnification claims are accordingly barred under the by-laws, as "failure to plead compliance with a notice of claim requirement constitutes a defect warranting dismissal of a complaint on the ground

- 13 -

that it fails to state a cause of action." *Zabar v. NYC Dep't of Educ.*, 2020 WL 2423450, at *10 (S.D.N.Y. May 12, 2020).

*Id.* At that juncture, Baroni had the option to amend his pleading as of right. He could have supplemented or revised his allegations in response to the deficiency exposed in the letter. He did not. Baroni, instead, vigorously disputed "that it is a 'mandatory condition' of Plaintiff's recovery that Plaintiff made a timely request for indemnity under the Port Authority By-Laws." JA93. Baroni declared that he was "under 'no obligation to affirmatively plead compliance with conditions precedent,'" insisting that "'the failure of a plaintiff to comply with conditions precedent is an affirmative defense.'" *Id.*

Following submission of the Port Authority's pre-motion letter and Baroni's response, the district court set a briefing schedule for the motion to dismiss. *See* JA3. The Port Authority's motion to dismiss described in detail why "Baroni's failure to provide the required notice means that his claims are barred by sovereign immunity." JA109-113. And the Port Authority explained that the required notice was the judgment of acquittal because, as Baroni himself acknowledged, "he 'became entitled … to reimbursement' '[u]pon the District Court's dismissal of the charges against him.'" JA107.

Section 4(C) of Judge Vyskocil's Individual Rules requires that, "[w]hen a motion to dismiss is filed, the nonmoving party must, within fourteen (14) days of filing of the motion, notify the Court and its adversary in writing whether (i) it

intends to file an amended pleading and when it shall do so, or (ii) it will rely on the pleading being attacked." Baroni elected to rely on the pleading being attacked. In his opposition to the Port Authority's motion to dismiss, Baroni argued that Article XI, Paragraph 8 of the By-Laws "does not apply to a demand for reimbursement," JA136, that Paragraph 8 requires only delivery of the document "that initiates [the underlying] investigation or case," JA137, and that, even if the By-Laws required delivery of the judgment of acquittal, that would be "an affirmative defense" that Baroni "was not required to negate … in his Complaint," JA140.

The Port Authority's reply reiterated that "Baroni was required to provide the Port Authority with the judgment of acquittal within five days of receipt but failed to do so." JA208. Moreover, the Port Authority explained, Baroni would lose even under his own view that the By-Laws require delivery of a case-initiating document because "Baroni has not pled (and cannot) that he provided the indictment within five days of receipt." JA210; *see also id.* ("Baroni has had ample opportunity to correct this pleading failure," including "after the Port Authority's pre-motion letter and after the motion to dismiss"). Even after the Port Authority submitted its reply brief, Baroni could have sought leave to amend his pleading. He did not. Instead, he decided to file a post-briefing letter asking the

district court to ignore the Port Authority's argument that Baroni's claims would fail even under his own interpretation.  JA220-221 (asserting waiver).[3]

### C.    Rulings On Review

On September 22, 2022, the district court (the case having been reassigned to Judge Laura Taylor Swain) granted the Port Authority's motion to dismiss, concluding that Baroni had not met his burden of establishing the court's subject-matter jurisdiction.  SPA12.  The court recognized that "New York and New Jersey's identical statutes"—N.Y. Unconsol. Law §7107 and N.J.S.A. §32:1-163— require "commencement of suit within one year from the date of the accrual of the ca[u]se of action."  SPA8.  "[F]ailure to satisfy" that provision "compels the dismissal of the action for lack of subject matter jurisdiction," *id*., because "[t]he Port Authority's waiver of sovereign immunity only applies to claims that have accrued," SPA11.  The court explained that "a cause of action for breach of contract accrues 'once the conditions precedent to filing suit have been satisfied,'" *id.*, and that, "[w]ithout such showing, Plaintiff cannot demonstrate that his cause of action has accrued or, consequently, that the Port Authority has waived its

---

[3]     The Port Authority responded by clarifying that it "raised no new argument in its reply."  JA222; *see id.* ("In a section of the Port Authority's reply titled 'Baroni Loses Under His Own Interpretation,' the Port Authority responded to Baroni's argument by pointing out that he failed to plead that he provided any such dispute-initiating document to the Port Authority.  Identifying flaws in an adversary's argument is, of course, the proper function of a reply brief.") (citations omitted).

sovereign immunity in this case." SPA12. The court found that "Plaintiff has not alleged, nor demonstrated, that he fulfilled the condition precedent to the Port Authority's contractual obligation to reimburse his defense costs under either the Port Authority's interpretation of the By-Laws—requiring timely delivery of the judgment of acquittal—or his own—requiring timely delivery of the indictment, as the document initiating the dispute." SPA11-12. Thus, the court concluded that the Port Authority's sovereign immunity was intact and subject-matter jurisdiction was lacking. SPA12. The court directed the Clerk of Court "to close the case." *Id*. Final judgment was entered the same day and Baroni was given notice of his right to appeal. SPA13-14.

After the district court entered final judgment, Baroni filed a "Motion to Alter and for Relief from the Judgment and for Leave to Amend the Complaint." *See* JA316. Identifying no change in controlling law and no newly discovered evidence, he moved the court for leave to file an amended complaint that asserted facts long known to him and, in any event, irrelevant to the court's lack of subject-matter jurisdiction. Specifically, Baroni sought to plead the following additional facts in the proposed amended complaint:

> (a) at the outset of the investigation, Mr. Baroni repeatedly requested that the Port Authority indemnify him and pay the cost of his defense; (b) the Port Authority instructed Mr. Baroni that his requests were sufficient and that he need not, and indeed should not, make any further requests, thus waiving its current argument that further requests needed to be made; and (c) upon Mr. Baroni's indictment,

- 17 -

delivery to the Port Authority's General Counsel of a copy of the indictment, although unnecessary, was made within five days of the indictment's issuance.

JA321.[4]  The Port Authority opposed the motion, citing Baroni's inexcusable delay in proposing these allegations and, more fundamentally, their futility in curing the jurisdictional deficiency identified by the Port Authority's motion to dismiss. JA357.  The Port Authority repeated that "delivery" under Paragraph 8 of Article XI refers to the indemnification-triggering document—here, the *judgment of acquittal*.  JA358.  And the Port Authority pointed out that, even if one were to accept Baroni's mistaken interpretation of Paragraph 8 as allowing delivery of the case-initiating *indictment*, the proposed allegations never allege that Baroni himself delivered or caused delivery of that indictment—only that the Port Authority somehow became aware of the document's existence.  JA360-361.[5]

---

[4]     The Port Authority does not concede, and has never conceded, the accuracy of any of Baroni's allegations.  The allegations were, and are, assumed to be true as required in pleading-stage motions.

[5]     On May 31, 2023, Baroni submitted a letter to the district court, apprising it of New Jersey's decision to indemnify his former co-defendant, Bridget Anne Kelly.  Dkt. 36.  The Port Authority responded that the "State of New Jersey's decision to indemnify its own employee, pursuant to the State's indemnification regime, changes nothing about Baroni's failure to plead an accrued cause of action under the Port Authority's by-laws," noting that, "[a]s Kelly herself stated in a recent interview, '[Baroni was] employed at the Port Authority which, I believe, their statute reads differently.'"  Dkt. 37 (first alteration added).

On June 15, 2023, the district court denied Baroni's motion. The court repeated its explanation that the Port Authority has only waived sovereign immunity for "'claims that have accrued,'" and that a cause of action for breach of contract only accrues "'once the conditions precedent to filing suit have been satisfied.'" SPA33. Thus, "[w]hether Mr. Baroni satisfied the condition precedent to the Port Authority's contractual obligation to reimburse his defense costs … determines whether or not the Port Authority has waived its sovereign immunity in this case." *Id.*

Ruling definitively on a question it had previously left open, the court determined that the only document that could satisfy Baroni's compliance with Paragraph 8 of Article XI of the By-Laws is "the document on which his claim to entitlement to an award of attorney's fees is based—the judgment of acquittal." SPA34. The court reasoned that even Baroni's proposed amended complaint alleges that Baroni became so entitled "'*[u]pon the district court's dismissal of charges against him*.'" *Id.*; *see* SPA35 ("Delivery of the indictment, simply put, could not have possibly put the Port Authority on notice that Mr. Baroni could be entitled to indemnification under Paragraph 7 of Article XI of the By-Laws."). Furthermore, the district court deemed irrelevant Baroni's alleged requests for indemnification "while the investigation and prosecution against him were ongoing" because "there is no dispute" that each such request was made "pursuant

- 19 -

to the permissive provision of Paragraph 7 of Article XI of the By-Laws," providing for ex ante defense costs, rather than the mandatory, ex post clause of Paragraph 7 that applies only after acquittal.  SPA36.  Finally, the district court concluded that "the Port Authority could not have 'waived' the By-Law requirements; nor is the Port Authority estopped from arguing that Mr. Baroni failed to comply with the requirements."  SPA37.  Because the allegations in the proposed amended complaint were "insufficient to demonstrate that the Court has subject matter jurisdiction to hear Mr. Baroni's claim," granting leave to amend would have been futile.  SPA40.

## SUMMARY OF ARGUMENT

I.     The district court properly dismissed this case for lack of subject-matter jurisdiction because the Port Authority has not waived its sovereign immunity as to Baroni's claims for indemnification.  Under statute enacted by both New York and New Jersey, the Port Authority only waives its sovereign immunity for suits commenced "within one year after the cause of action therefor shall have accrued," N.Y. Unconsol. Laws §7107; N.J.S.A. §32:1-163, and a cause of action does not accrue until "the conditions precedent to filing suit have been satisfied," *Fabozzi v. Lexington Ins. Co*., 601 F.3d 88, 93 (2d Cir. 2010).

Here, the "conditions precedent to filing suit" include compliance with Paragraph 8 of Article XI of the Port Authority's By-Laws, which mandates that

- 20 -

"[t]he benefits of this Article XI shall be conditioned upon … delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the party seeking indemnification that the Port Authority provide for defense pursuant to this Article XI[.]" JA72 ¶ 8.

Paragraph 8 of Article XI of the By-Laws applies to "[t]he benefits of this Article XI"—all of them. JA72 ¶ 8. Because Baroni demands entitlement to one of those benefits—namely, post-acquittal reimbursement—he was required to serve a copy of his judgment of acquittal on the Port Authority. He concedes he did not, and that is the end of the matter. There is no basis in text or logic to limit Paragraph 8's application only to certain paragraphs of "this Article XI." *Id.* Lest any question remain about the scope of Paragraph 8, it is resolved by the interpretive guidance under Paragraph 10, which instructs that Article XI "shall not be construed in any way to impair, alter, limit, modify, abrogate, or restrict any immunity available to" the Port Authority. JA73 ¶ 10. Baroni cannot relegate compliance with Paragraph 8 to an affirmative defense because such compliance is necessary to establish subject-matter jurisdiction—his burden. Thus, the district court properly granted the Port Authority's motion to dismiss pursuant to Rule 12(b)(1).

- 21 -

II.     The district court did not abuse its discretion in denying Baroni's motion to vacate the judgment or for relief from judgment.  Baroni's proposed complaint amendments were futile because they did not establish compliance with Paragraph 8 of Article XI of the By-Laws.  And Baroni does not even try to demonstrate that his effort to upend the district court's judgment met the heightened standards of Rule 59(e) or Rule 60(b).  He could not possibly make that showing.

III.    Baroni's scattershot excuses for noncompliance are meritless.  Strict, not substantial, compliance is required for procedures resulting in a waiver of sovereign immunity.  And the Port Authority neither waived nor is estopped from asserting that its sovereign immunity remains intact.

IV.     Finally, the district court had no obligation or reason to remand Baroni's state-law claims.  This case was properly dismissed for lack of subject-matter jurisdiction because the Port Authority's sovereign immunity remains intact—and it would remain so in state court.

## ARGUMENT

### I.     THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION OVER BARONI'S NONCOMPLIANT INDEMNIFICATION CLAIMS

Baroni, who seeks mandatory post-acquittal indemnification, concedes that he did not deliver his judgment of acquittal to the Port Authority within five days.

- 22 -

The question before the Court is whether that failure precludes indemnification under the By-Laws and sovereign immunity waiver statutes.  It does.

### A.    Paragraph 8 Applies To All Benefits Under Article XI

Baroni's argument begins and ends with the astounding proposition that "the by-laws place *no requirements* on how or when an indemnified officer may claim entitlement to post-acquittal reimbursement of legal expenses."  Br. 28 (emphasis added).  According to Baroni (at 29), Paragraph 8's notice requirements only apply to the benefits of "Article XI, Paragraph 2" (covering advancement of defense fees) and the benefits of "Article XI, Paragraph 3" (covering default judgments and assignment of outside counsel)—not, as Paragraph 8 actually says, "the benefits of *this Article XI*."  JA72 ¶ 8 (emphasis added).  Every justification Baroni proposes for this countertextual interpretation fails; the plain text, structure, and purpose of Article XI make compliance with Paragraph 8 mandatory for *all* benefits available under the Article.

First, Baroni's interpretation ignores the plain text of Paragraph 8, which says:  "*The benefits of this Article XI* shall be conditioned upon … delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the party seeking indemnification that the Port Authority provide for defense pursuant to *this Article*

*XI*[.]" JA72 ¶ 8 (emphasis added). "The benefits of this Article XI" naturally include the benefits listed in the immediately preceding paragraph of Article XI, Paragraph 7, and thus include "reimbursement of defense costs" post-acquittal. JA71-72 ¶¶ 2-8.

"The Court must assume the … choice of words was advised." *New York State Nurses Ass'n Benefits Fund ex rel. Buchanan v. Nyack Hosp.*, 46 F.4th 97, 107 (2d Cir. 2022). In *Nyack*, a trust agreement specified that trustees were entitled to "the payroll and wage records" of an employer. *Id.* The court observed that this language was "phrased in broad terms, without any words of limitation." *Id.* It did not "limit the scope … to some subset of the payroll and wage records," as it "very well might have done." *Id.* The drafters "chose instead to use the definite article 'the,' connoting that the [t]rustees were entitled … to the set of payroll and wage records and not some subset of those records." *Id.*; *see also Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) ("the definite article preceding the term 'claims' indicates that 'the claims asserted' means *all* the claims asserted"); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) ("using the definite article" before the phrase "'the primary defendants are States'" "'requires that *all* primary defendants be states'"); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) ("The use of the definite article, 'the,' before the plural noun, 'primary defendants,' and the use of the plural verb, 'are,'

leaves no doubt Congress intended the state action provision to preclude CAFA

jurisdiction only when all of the primary defendants are states, state officials, or

state entities."); *Singh v. American Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th

Cir. 2019) (same interpretation of "'the primary defendants'" meaning "'all,'"

aligning "with our sister circuits").

Paragraph 8's introductory clause, using "the" just as in *Nyack*, *Kaufman*,

*Frazier*, *Woods*, and *Singh*, is clear and categorical, applying to *all* of the benefits

under Article XI, including the post-acquittal reimbursement available under

Paragraph 7.  Likewise, the phrase "this Article XI" in Paragraph 8 must mean the

*entire* Article XI.  Indeed, where convenient for him, Baroni reads the words "this

Article XI" to mean what they say:  the whole Article.  For example, Baroni

alleges that definition of "[a]n 'indemnified party' … in Paragraph 1 of Article XI"

includes him, JA27 ¶ 31, assuming rightly that Paragraph 1's applicability to "this

Article XI," JA71 ¶ 1, applies the defined term over the entire Article (including

Paragraph 7).  Nor does—or can—Baroni suggest that the phrase "this Article XI"

in other parts of Article XI means anything other than the whole Article.  *See, e.g.*,

JA71-72 ¶ 5 (making settlements and judgments authorized for payment "if not

inconsistent with the provisions of *this Article XI*") (emphasis added); JA72 ¶ 6

("Nothing in *this Article XI* shall require the Port Authority to indemnify or save

harmless an indemnified party with respect to fines or penalties") (emphasis

- 25 -

added).  The same meaning applies to the phrase "this Article XI" in Paragraph 8, rendering its requirements applicable to Paragraph 7 along with the rest.  JA72 ¶ 8.

"The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008).  Baroni's interpretation would improperly read Paragraph 8's opening clause out of the By-Laws entirely.  Or, just as distortedly, it would somehow construe "the" to mean "a subset of the" and "this Article XI" to mean "portions of this Article XI".  None of these works.  Baroni's interpretation therefore fails at the starting gate.

Moreover, neither language nor logic supports applying Paragraph 8 only to Paragraphs 2 (covering advancement) and 3 (covering default judgments and assignment of outside counsel).  True, these first two substantive paragraphs of Article XI contain introductory reminders that Paragraph 8 applies.  JA71 ¶¶ 2-3. But the absence of that reminder in later paragraphs cannot possibly displace Paragraph 8's unambiguous application to "[t]he benefits of this Article XI"—*all* of them.  JA72 ¶ 8.  It is "untenable" to interpret "clauses" in the same contract as "in conflict with one another," which is exactly what Baroni's reading does by construing Paragraph 8's reference to "this Article XI" as contradicted by the presence of prefatory reminders in Paragraphs 2 and 3 only.  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995); *Schlaifer Nance & Co.*

*v. Estate of Warhol*, 119 F.3d 91, 100 (2d Cir. 1997) ("well-established principles of contract interpretation" "require that all provisions of a contract be read together as a harmonious whole, if possible"). The drafters of Article XI may well have reasoned that, by the time a reader gets to Paragraph 4, the applicability of Paragraph 8 has been made clear enough. Whatever the reason, there is no textual basis for interpreting "The benefits of this Article XI" to mean "The benefits of Paragraphs 2 and 3 of this Article XI."

Grasping for a policy rationale, Baroni posits that Paragraph 8's requirements "apply only to the provisions of the by-laws that require the Port Authority to advance or provide an indemnified officer a defense—either by the general counsel or outside counsel—when he or she is sued *civilly*." Br. 28. But that description of Paragraphs 2 and 3 is incomplete. For instance, apart from "advanc[ing] or provid[ing] an indemnified officer a defense," *id.*, Paragraph 3 requires the Port Authority to "take the necessary steps on behalf of the individual in order to avoid entry of a default judgment pending resolution of any question pertaining to the determination to provide for a defense," JA71 ¶ 3. By definition, any such "steps" would occur "pending resolution," *id.*, of whether the Port Authority would be "advanc[ing] or provid[ing] an indemnified officer a defense." Br. 28. Such steps might include, for example, the Port Authority appearing as an intervenor. *See Stebbins v. Polano*, 2022 WL 2668371, at *3 (N.D. Cal. July 11,

- 27 -

2022) (granting non-parties' motion to intervene and considering their opposition to motion for default judgment). Paragraph 3's obligation to prevent default judgments might apply even where no defense or indemnification is ultimately due. Thus, Baroni's policy justification for Paragraph 8 misses the Paragraph 3 category of cases where, even by Baroni's own concession, notice is required.

The asserted civil-criminal distinction under Baroni's policy rationale fails too. Baroni focuses on Paragraph 8 being inapplicable to "the *criminal* advancement described in Paragraph 7." Br. 34-35. But he ignores that Paragraph 7's "advancement" provision covers *civil* cases as well—specifically, those in which "punitive damages are sought." JA72 ¶ 7; *see, e.g.*, *Racich v. Celotex Corp.*, 887 F.2d 393, 396 (2d Cir. 1989) ("[C]ommon-law tort action for personal injury by definition includes the element of damages, … including punitive damages when factually appropriate[.]"). Thus, Baroni's idea that the Port Authority requires notice in *civil* advancement cases does not square with his simultaneous assertion that Paragraph 8's notice requirement is inapplicable to Paragraph 7, which includes *civil* advancement.

Nor does Baroni's discretionary-mandatory distinction hold. Following Baroni's logic, no notice is required for the Port Authority to assume the obligations contained in Paragraph 4 because Paragraph 4 lacks the kind of introductory language present in Paragraphs 2 and 3. But Paragraph 4 reflects

*mandatory*, not discretionary, indemnification obligations.  *See* JA71 ¶ 4 ("*shall* indemnify") (emphasis added).  And, of course, the obligation invoked in this case is a mandatory one.  *See* JA72 ¶ 7 ("*shall* provide reimbursement of defense costs") (emphasis added).  Baroni does not explain why the Port Authority would assume *mandatory* indemnification obligations—civil and criminal—without any notice requirement.

Looking closely at the text of Paragraph 8, Baroni is also wrong that its list of documents encompasses only documents that are case-initiating and civil. Paragraph 8 requires providing "any summons, complaint, process, notice, demand or pleading within five days after receipt."  JA72 ¶ 8.  The term "notice," for example, comprises a broad category of documents that often come into play at the end of a case.  Indeed, when a court grants a motion for judgment of acquittal, the clerk "must serve *notice* of the entry on each party."  Fed. R. Crim. P. 49(d) (emphasis added).  Structurally, Baroni's interpretation is implausible because it means a putative indemnitee never needs to provide the very document alleged to create the entitlement to payment—precisely what a notice requirement does. Indeed, Baroni's interpretation would generally have harsher consequences for indemnitees than the Port Authority's interpretation.  His reading would mean that an employee who failed to give notice at the outset of a criminal case could never repair that failure by, for example, giving notice upon acquittal.

**B.      Article XI Cannot Be Read To Diminish Sovereign Immunity**

Paragraph 10 of Article XI gives a specific, clear instruction for interpreting

"the provisions of this Article XI":

> Except as otherwise specifically provided herein, the provisions of
> this Article XI shall not be construed in any way to impair, alter,
> limit, modify, abrogate, or restrict any immunity available to or
> conferred upon any unit, entity, Commissioner, officer, or employee
> of the Port Authority, or any right to defense and/or indemnification
> provided for any governmental officer or employee by, in accordance
> with, or by reason of, any other provision of state or federal statutory
> or common law.

JA73 ¶ 10.  Even if Baroni's interpretation of Paragraph 8 as only applicable to

Paragraphs 2 and 3 were somehow equally reasonable as the Port Authority's

interpretation of Paragraph 8 as applicable to "[t]he benefits of this Article XI"—it

is not—Paragraph 10 requires that the Port Authority's interpretation prevails.

That is because Baroni's interpretation works a significant impairment of

sovereign immunity.

Under the Port Authority's interpretation, the conclusion of Paragraph 8's

five-day timeframe for providing notice would immediately empower the Port

Authority to make a claim "accrued" (by rejecting the demand for

indemnification), which would start the "one year" timeline for commencing a

cause of action pursuant to the statutes waiving the Port Authority's sovereign

immunity.  N.Y. Unconsol. Law §7107; N.J.S.A. §32:1-163.  By contrast, Baroni's

reading would allow a putative indemnitee to file suit along any timeframe he or

she chooses—years or decades after the indemnification-triggering event—
because, per Baroni, although one is required to "mak[e] a claim under Article XI
of the By-Laws for reimbursement of [defense] costs" and receive a "denial of
[that] claim" before filing suit, JA28 ¶¶ 35-37, "the by-laws place no requirements
on how or when an indemnified officer may claim entitlement to post-acquittal
reimbursement of legal expenses." Br. 28. This unconstrained freedom to demand
payment at any point is not consistent with the time-limited window for suit
contemplated by the Port Authority's limited sovereign immunity waiver. *See*
N.Y. Unconsol. Law §7107; N.J.S.A. §32:1-163. Without question, Baroni would
"construe[]" Article XI "in a[] way to impair, alter, limit, modify, abrogate, [and]
restrict" the immunity otherwise available. JA73 ¶ 10. Thus, under the
interpretive instruction provided by Article XI itself, the Port Authority's reading
must prevail.

The interpretive instruction provided by Paragraph 10 of Article XI
supersedes Baroni's invocation of the desperate option to interpret a contract
against its drafter. *See* Br. 36-37. This Court has made clear that the *contra
proferentem* doctrine applies "only as a matter of last resort after all aids to
construction have been employed without a satisfactory result." *Albany Sav. Bank,
FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997). Here, the plain text and structure

of Article XI support the Port Authority's interpretation and, lest any doubt

remains, Paragraph 10 resolves it.

### C. Baroni Was Required To Plead Compliance With The By-Laws

The Port Authority enjoys sovereign immunity. It is subject to suit only to

the extent that it has waived that immunity, and any such waiver is narrowly

construed and strictly enforced. *See Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d

620, 624 (2d Cir. 2011) (statutes only consent to suit "in limited circumstances");

*Dreger v. New York State Thruway Auth.*, 609 N.E.2d 111, 112 (N.Y. 1992)

("Because suits against the State are allowed only by the State's waiver of

sovereign immunity and in derogation of the common law, statutory requirements

conditioning suit must be strictly construed.").

The Port Authority's sovereign immunity was waived, to the extent it was

waived, by statute. Failure to comply with the statute requires dismissal of the

action. *Fabozzi*, 601 F.3d at 93; *see also Belpasso v. Port Auth. of N.Y. & N.J.*,

959 N.Y.S.2d 442 (App. Div. 2013*)* ("Absent compliance with the notice of claim

requirement, the court lacks subject matter jurisdiction."); *Patel v. Port Auth. of*

*N.Y. & N.J.*, 586 N.Y.S.2d 747 (App. Div. 1992) ("[S]ince a court may not waive

jurisdictional defects in the service of a notice of claim in the absence of statutory

authority … the action must be dismissed."); *Luciano v. Fanberg Realty Co.*, 475

N.Y.S.2d 854, 857 (App. Div. 1984) ("The notice of claim requirement with respect to the State or a State agency … is jurisdictional.").

As relevant here, the Port Authority waives sovereign immunity only for suits commenced "within one year *after* the cause of action therefor shall have *accrued*." N.Y. Unconsol. Laws §7107 (emphasis added); N.J.S.A. §32:1-163 (emphasis added).

"[A] claim generally accrues only once the conditions precedent to filing suit have been satisfied." *Fabozzi*, 601 F.3d at 93. By failing to plead compliance with Paragraph 8 of the By-Laws, Baroni failed to allege satisfaction of a condition precedent to filing a claim and thus failed to establish that his claims had accrued. As a consequence, no court—state or federal—has subject-matter jurisdiction over his complaint. *See Caceres*, 631 F.3d at 624 (claims falling outside the Port Authority's waiver of sovereign immunity are jurisdictionally barred).

Put differently, notice under Paragraph 8 is a mandatory condition precedent for any post-acquittal reimbursement claim against the Port Authority, and it is blackletter law that a claim subject to a condition precedent accrues "only when the condition has been fulfilled." *John J. Kassner & Co. v. City of N.Y.*, 389 N.E.2d 99, 102 (N.Y. 1979); *see also Deutsche Bank Nat'l Tr. Co. ex rel. Tr. for Harborview Mortg. Loan Tr. v. Flagstar Cap. Mkts. Corp.*, 112 N.E.3d 1219, 1224 (N.Y. 2018) (where condition precedent "creates a condition to defendant's

- 33 -

performance under the contract," cause of action does not accrue until condition occurs); *Board of Educ. of Wildwood v. Richmond Constr. Co.*, 105 A. 220, 221 (N.J. 1918) (If a provision was a condition precedent to recovery, a "suit could not be commenced until [the condition] had taken place."). Because that condition was never fulfilled, Baroni's claims never accrued and the Port Authority's sovereign immunity remains intact. The district court thus correctly dismissed Baroni's claims.

"'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" (citations omitted)), *aff'd*, 561 U.S. 247 (2010). Here, subject-matter jurisdiction required satisfaction of the By-Laws' condition precedent to the Port Authority's waiver of sovereign immunity. Baroni failed to allege facts showing that he satisfied that condition precedent, and accordingly his complaint does not establish subject-matter jurisdiction.

Nor did Baroni's complaint satisfy Rule 9(c)'s standard for pleading the satisfaction of conditions precedent, which requires a plaintiff to allege generally

that all conditions precedent have occurred or been performed.  Baroni's pleading, in fact, *negates* satisfaction of the condition precedent because it makes clear that he did not deliver the judgment of acquittal to the Port Authority within five days, as required by Paragraph 8 of Article XI of the By-Laws.[6]  Accordingly, Baroni's complaint fails to establish subject-matter jurisdiction, and was properly dismissed.

Baroni is wrong to say that the sovereign immunity waiver statutes permit a claim to be brought before it accrues.  Again, the statutes provide that "any suit … shall be commenced within one year after the cause of action therefor shall have accrued."  N.Y. Unconsol. Law §7107; N.J.S.A. §32:1-163.  Baroni's imaginative suggestion is that the phrase "within one year *after*" accrual could mean "within one year after accrual, *or at any time before accrual*."  Br. 43-45.  But that is not what the statutes say.  And Baroni does not begin to explain why New York and New Jersey would have decided to waive the Port Authority's sovereign immunity for prematurely brought claims—*i.e.*, claims brought before accrual and in violation of the By-Law's notice requirements.  Nor does his interpretation comport with the ordinary meaning of the statutory language.  Time periods are

---

[6]    *See* Wright & Miller, *Federal Practice & Procedure* §1303 (4th ed. 2023) ("If the claimant goes beyond the requirements of Rule 9(c) by attempting to plead the performance or occurrence of conditions precedent specifically but fails to demonstrate compliance with the requirements of the contract, the complaint will be deemed insufficient.").

typically defined to run from (1) a starting point to (2) an ending point. *See* N.Y. C.P.L.R. 203(a) ("The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed."). Under Baroni's interpretation, the time period has no starting point.

The Port Authority's interpretation of the statute is also consistent with New York contract law. Although a contract claim generally accrues from "the time of the breach," *John J. Kassner & Co.*, 389 N.E.2d at 102, "[a] substantive condition precedent impacts accrual of a breach of contract cause of action because no obligation to perform arises and no breach therefore occurs until the 'condition has been fulfilled.'" *Deutsche Bank*, 112 N.E.3d at 1225; *see also Fahs Constr. Grp., Inc. v. State*, 999 N.Y.S.2d 244, 246 (App. Div. 2014) (applying rule to conditions precedent requiring timely notice and delivery of claim-supporting materials). Here, the Port Authority could not have breached any duty to Baroni until Baroni delivered the notice required by Paragraph 8. Absent breach by the Port Authority, Baroni's claim has not accrued, and the Port Authority has not waived its sovereign immunity.

Contrary to Baroni's suggestion, the Port Authority's commonsense interpretation would not set precedent for the importation of merits determinations into sovereign immunity analyses. New York and New Jersey did not limit their

waiver of the Port Authority's sovereign immunity to *meritorious* claims. They did, however, limit it to *accrued* claims. Holding that Baroni failed to plead accrual does not predetermine the merits of his claims, *i.e.*, whether he satisfies the indemnification eligibility requirements set forth in Paragraph 7, such as that he acted within the scope of his employment (*see* JA29-30 ¶¶ 40-43). Instead, the district court's holding went only to whether the court had jurisdiction over Baroni's claims given the unique allegations pled (or not pled) concerning notice delivery. That is all this Court must consider.

Courts frequently engage in similar analyses when conditions precedent affect accrual. For example, the federal government's waiver of sovereign immunity under the Federal Tort Claims Act similarly bars premature, unexhausted cases. *See McNeil v. United States*, 508 U.S. 106, 111 (1993) (FTCA's limited waiver of sovereign immunity bars case filed before an agency has finally rejected a claim for relief). Numerous state and municipal immunity statutes contain the same limitation. *See, e.g.*, *Piesco v. City of N.Y.*, 650 F. Supp. 896, 901 (S.D.N.Y. 1987) (applying New York municipal law requirement that claims be filed within 90 days of accrual and recognizing that "commencement rules" are "intended to

protect the public entity against the proliferation of often baseless, insufficiently investigated claims, which are numerous, costly and difficult to defend").[7]

Baroni argues (Br. 49), for the first time on appeal, that "the Port Authority has no immunity with respect to federal law claims under the Supreme Court's decision in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)." That argument is waived, because "[a]rguments raised for the first time on appeal are deemed waived." *Slattery v. Hochul*, 61 F.4th 278, 293 n.9 (2d Cir. 2023). It is also wrong. "The concept of state sovereign immunity encompasses different species of immunity." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015). *Hess* concerned only the "single species" of Eleventh Amendment immunity. *Id.* "States also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court." *Id.* This "broader" immunity derives from

---

[7]    Contrary to Baroni's argument, *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008), does not compel a different result. That case concerned "discretionary function governmental immunity," which is "merely a defense to liability, rather than an immunity from suit." *Id.* at 187. As the New York Court of Appeals made clear in *Brown v. State*, 674 N.E.2d 1129 (N.Y. 1996), upon which *World Trade Center* relied, state "immunity" for discretionary actions is a "legal defense[] which the state may interpose to avoid liability" that "should not be confused with sovereign immunity," *i.e.*, "the historic immunity derived from the State's status as a sovereign[.]" *Brown*, 674 N.E.2d at 1141. Because the Port Authority asserts traditional sovereign immunity here as a problem of subject-matter jurisdiction, this Court's holding in *World Trade Center* is inapposite.

the "common law," and is not impaired when the immune entity removes a case to federal court. *Id.* at 483, 486. It applies here.

## II. BARONI'S PROPOSED AMENDMENT DID NOT CURE THE JURISDICTIONAL DEFICIENCY AND THE DISTRICT COURT PROPERLY DENIED BARONI'S MOTION TO AMEND

Once the district court entered judgment, it became "significantly more difficult" for Baroni to amend his complaint. *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012). Baroni could only have amended his complaint if he met the burden of establishing a basis to vacate the judgment pursuant to Rule 59(e) or Rule 60(b). *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020); *see National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint."); *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 39 n.3 (2d Cir. 2020) (affirming "the district court's denial of plaintiffs' motion to amend the complaint pursuant to Rule 15(a) because there [was] no valid basis to vacate the previously entered judgment"). The district court correctly denied Baroni's post-judgment motion, and this Court reviews that denial for abuse of discretion. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) (per curiam) ("'A district court's denial of a party's motion to alter or amend judgment under Rule 59(e) is ... reviewed for an abuse of discretion.'"); *Cody, Inc.*

*v. Town of Woodbury*, 179 F.3d 52, 57 (2d Cir. 1999) (per curiam) (reviewing Rule 60(b) motion for "abuse of discretion").

### A.    Baroni's Post-Judgment Motion Did Not Satisfy Rules 59 Or 60

Rules 59(e) and 60(b) "impose a very high burden," *Goureau v. Lemonis*, 2021 WL 5909742, at *2 (S.D.N.Y. Dec. 14, 2021), for good reason.  The Federal Rules "'prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"  *Schwartz v. HSBC Bank USA, N.A.*, 2017 WL 2634180, at *2 (S.D.N.Y. June 19, 2017), *aff'd*, 750 F. App'x 34 (2d Cir. 2018).  Granting a Rule 59(e) motion is appropriate only when the movant identifies "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Metzler*, 970 F.3d at 142.

Baroni never even tries to show that he meets those demanding standards.  Nor could he.  The alleged facts Baroni sought to add to his proposed amended complaint all relate to events involving him or his own lawyers years ago.  *See Metzler*, 970 F.3d at 146 (movant "must have been justifiably ignorant of [the newly discovered evidence] despite due diligence").  There is no manifest injustice because Baroni's wounds, if any, are entirely self-inflicted.  Rule 59(e) does not permit a plaintiff to "see how he would fare on [a] motion to dismiss" before adding allegations he has known from the outset.  *Vine v. Beneficial Fin. Co.*, 374

F.2d 627, 637 (2d Cir. 1967); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 191

(2d Cir. 2008) (denying leave to amend when plaintiff "certainly knew" the facts

he intended to assert but purportedly "did not realize [their] significance" until a

development in the law).

Moreover, prejudicial delay provides ample reason to deny a Rule 59(e)

motion, just as it permits denial of leave to amend before judgment. *See Burch v.*

*Pioneer Credit Recovery, Inc*., 551 F.3d 122, 126 (2d Cir. 2008) (per

curiam) ("[M]otions to amend should generally be denied in instances of undue

delay … or undue prejudice to the non-moving party.").  Following the Port

Authority's motion to dismiss, Baroni could have amended his complaint to

include the allegations he sought to add only after final judgment.  He chose not to.

Instead, from the outset of this litigation, Baroni insisted that noncompliance with

the By-Laws was "an affirmative defense" "which need not be pled."  JA93; *see*

JA141.  In a post-briefing letter, Baroni doubled down on the inapplicability of the

requirement.  JA 220.  Baroni tried to persuade the district court with legal

arguments rather than pleading amendments.  The district court did not abuse its

discretion when it held Baroni to the consequences of that approach.

Meanwhile, permitting vacatur of the judgment and amendment would have

significantly prolonged resolution of this action, in which the litigation effort itself

is cognizably injurious because "'sovereign immunity protects a sovereign from

the expense, intrusiveness, and hassle of litigation'"—not only ultimate liability.

*Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016); *see also Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (amendment "particularly prejudicial" when defendant had immunity from suit).

Nor did the district court err in denying Baroni's motion for relief under Rule 60. Pursuant to Rule 60(b), a court may relieve a party from a final judgment on the basis of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) a void judgment; (5) a judgment that has been satisfied, released, or discharged; or (6) any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b). None of those circumstances applied here. Further, the district court did not err because Rule 60(b)(6) is "'properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule.'" *Metzler*, 970 F.3d at 143.

## B.    Baroni's Proposed Amendments Were Futile

On top of these shortcomings, Baroni sought relief from judgment to add futile new allegations that would have kept the Port Authority's sovereign

- 42 -

immunity intact and the district court without subject-matter jurisdiction. His motion was predicated on theories and facts he was invited, but declined, to raise at several points before the judgment's entry. The district court correctly held that the Federal Rules did not give him another bite at the apple.

Baroni's proposed complaint amendments were futile because they failed to cure the jurisdictional deficiency identified by the Port Authority's motion to dismiss—the failure to plead that Baroni "fulfilled the condition precedent to the Port Authority's contractual obligation to reimburse his defense costs." SPA11-12. A court may appropriately deny leave to amend to add futile allegations. *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). It follows that proposing to add futile allegations fails the heightened standards of Rule 59 and 60. *See, e.g.*, *Drobner v. Bruce*, 531 F. App'x 96, 98 (2d Cir. 2013). Here, the new proposed allegations are futile for several reasons.

*First*, and most simply, the new allegations did not establish compliance with Paragraph 8 of Article XI of the Port Authority's By-Laws. Whether the Court reads Paragraph 8 to require delivery of the indictment or delivery of the judgment of acquittal ultimately makes no difference because the proposed additional allegations assert neither. Baroni never alleges that he delivered the judgment of acquittal—period. Nor does he allege that he delivered the indictment

or, by any means, caused it to be delivered.[8]  Because the proposed amended

complaint failed to allege compliance with Paragraph 8 of Article XI, the new

allegations are futile.

*Second*, Baroni is wrong that Paragraph 8 requires delivery of the case-

initiating document.[9]  As the Port Authority has argued from the beginning, the

relevant "delivery" under Paragraph 8 is of the obligation-triggering document—

here, the judgment of acquittal.  As Baroni alleged in both the original and the

proposed amended complaint, the Port Authority had no obligation to indemnify

him until the district court in his criminal case issued its judgment of acquittal:

> On June 11, 2020, the district court issued an order vacating the
> judgment of conviction against Mr. Baroni, dismissing the indictment
> against him, and directing that the case be closed. …

---

[8]      The proposed amended complaint surmises that the indictment "was
delivered," JA233 ¶ 20, but carefully avoids asserting that Baroni (or his counsel)
were at all involved in the delivery.  That is inadequate, because even under
Baroni's incorrect interpretation that Paragraph 8 requires delivery of the
indictment (not the judgment of acquittal), the issue is not whether the Port
Authority somehow received a copy; it is whether Baroni effectuated "delivery."
JA72 ¶ 8.  After all, it is only delivery *by the party seeking indemnification* that
puts the Port Authority on notice that indemnity is being sought.

[9]      Baroni's primary argument has been that the case-initiating document
covered by Paragraph 8 is the "indictment," JA325, but he has also suggested that
it was sufficient for him to have "confirmed" delivery of "the initial subpoena
related to the Bridgegate matter," Br. 51, which was, in fact, alleged to be a
subpoena "from a Select Committee of the New Jersey Legislature," JA233 ¶ 20,
not even a subpoena from the prosecutor of the criminal case for which he now
seeks reimbursement.  Nothing in Paragraph 8's text, or common sense, suggests
that a putative indemnitee can deliver a subpoena from one investigation as notice
of a demand for defense or indemnification in a separate litigation.

- 44 -

> *Upon the district court's dismissal of the charges against him*, Mr. Baroni *became entitled* under the Port Authority's [B]y-[L]aws to reimbursement … of the defense costs incurred by him and on his behalf in successfully defending against the criminal charges.

JA26 ¶¶ 27-28; JA238 ¶¶ 36-37 (emphasis added).

Baroni's position that he could have satisfied the requirements Paragraph 8 imposes on claims for post-acquittal reimbursement by delivering any document related to the case, including the indictment, is wrong. Paragraph 8 is obviously written to require delivery of the indemnification-triggering document, "such delivery *being deemed a request* by the party seeking indemnification." JA72 ¶ 8 (emphasis added). The delivery gives contemporaneous notice to the Port Authority that the hopeful indemnitee is *then* entitled to payment. *Id*. As the district court correctly reasoned, delivery of the indictment "could not have possibly put the Port Authority on notice" that Baroni would, years later, be entitled to indemnification. Indeed, Baroni himself acknowledges that his journey to acquittal was "neither quick nor cheap." Br. 1, 24. When he was indicted, the possibly of acquittal was purely theoretical—indeed, increasingly unlikely as the case progressed. After the Third Circuit's affirmance, Baroni "never dreamed the Supreme Court of the United States would take this case" because "the percentage chances of that are very, very small." MSNBC, *The Beat w/ Ari Melber (Transcript)* (May 14, 2020), https://tinyurl.com/2rabp39x. Delivery of the indictment in 2015 could not have possibly put the Port Authority on notice that it

would be obligated to indemnify Baroni following a 2020 acquittal—for extensive fees encompassing a trial, a circuit appeal, a successful certiorari petition, and a favorable Supreme Court ruling.

Baroni's misguided suggestion that the phrase "provide for defense" in Paragraph 8 means only advancement and not indemnification, Br. 35, is incorrect as a matter of plain text—as revealed when the very same clause refers to the same "delivery" as a request "by the party seeking *indemnification*," JA72 ¶ 8 (emphasis added). Moreover, the portion of Paragraph 7 on which Baroni relies for his reimbursement says that "the Port Authority shall provide reimbursement of *defense* costs incurred by or on behalf of an indemnified party in defense of a criminal proceeding." JA72 ¶ 7. Article XI often uses "defense" and "indemnification" interchangeably. *See* JA71 ¶ 2 ("Upon compliance by an *indemnified* party with the provisions of paragraph 8 of this Article XI, the Port Authority shall provide for the *defense* of the *indemnified party*[.]") (emphasis added); *id.* ¶ 3 (describing Port Authority's obligation to "represent" an "individual seeking *indemnification*") (emphasis added); JA72 ¶ 8 (allowing the Port Authority to "withdraw … *defense*" where "*indemnification* is not required") (emphasis added).

Nor does it help Baroni that Paragraph 8 also requires, where applicable, "cooperation" in defense and allows, where applicable, the Port Authority to

"withdraw" from defense and "demand reimbursement" from the "party." Br. 35-36. He is simply wrong that these provisions are "nonsensical" as applied to post-acquittal reimbursement. *Id*. The first clause disqualifies a post-acquittal demand if the putative indemnitee refuses "full cooperation" with the Port Authority during the individual's own criminal defense (at any point) or, separately, fails to cooperate during other proceedings "against the Port Authority" based on the charged conduct (at any point). And the second clause provides that the Port Authority might "demand reimbursement from [the indemnified] party" (at any point) if it turns out that indemnification is not warranted. *Id*. The fact that some of Paragraph 8's requirements may have more work to do pre-trial than post changes nothing. Compliance with all requirements is plainly a condition for receipt of *any* "benefits" under the Article. *Id*.

## III. BARONI'S SCATTERSHOT EXCUSES FOR NONCOMPLIANCE ARE MERITLESS

With the text of the By-Laws and sovereign immunity waiver statutes against him, Baroni turns to a few fallback positions in defense of his proposed amended complaint. *See* Br. 60-67. These arguments are futile, as they were made only in his motion to amend and are barred independently by prejudicial delay. *See Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 296 n.5 (2d Cir. 2021) (The Court declined to address the merits of the Plaintiff's motion for leave to amend, because it affirmed the lower court's denial

of leave to amend "on grounds unrelated to futility."). *First*, Baroni argues that the Court should excuse his noncompliance because he "alleged substantial compliance" with the By-Laws. Br. 60. Substantial compliance is not enough— nor is it properly alleged here. *Next*, Baroni asks the Court to find waiver and/or estoppel based on allegations in his proposed amended complaint that, pre-acquittal, "the Port Authority's general counsel informed Plaintiff's counsel that Plaintiff had fulfilled all of his obligations under the by-laws and affirmatively told him to stop making further efforts." Br. 61-62. These allegations cannot, as a matter of fact or law, establish waiver or estoppel.

## A. Waivers Of Sovereign Immunity Are Strictly Enforced

To start, waivers of sovereign immunity do not permit substantial compliance—they demand strict construction. "The statutes setting forth the conditions under which the [Port Authority] consented that it may be sued are clear and unambiguous[.]" *Rao v. Port of New York Auth*., 122 F. Supp. 595, 597 (E.D.N.Y. 1954), *aff'd*, 222 F.2d 362 (2d Cir. 1955). "Statutes wherein sovereign immunity against suit is waived must be strictly construed." *Id.*; *see City of N.Y. v. McAllister Bros., Inc*., 278 F.2d 708, 710 (2d Cir. 1960) ("technical requirements for service of process upon the government, when it has waived its sovereign immunity, must be strictly complied with"); *Lyons v. Port Auth. of N.Y. & N.J.*, 643 N.Y.S.2d 571 (App. Div. 1996); *cf. Malmberg v. United States*, 816 F.3d 185,

196 (2d Cir. 2016) ("The FTCA, as a statute waiving sovereign immunity, must be complied with strictly.").[10]  Baroni's reach for substantial compliance is therefore unavailing because, under governing law, sovereign immunity is only waived by *strict* compliance with the narrowly constructed statutes at issue.[11]

In any event, Baroni also fails to allege substantial compliance, which, by his own admission, requires "a general compliance with the purpose of the statute." Br. 61 (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 783 (N.J. 2003)).  The purpose of Paragraph 8 of Article XI of the By-Laws is to facilitate prompt notice of an indemnification obligation through delivery of the indemnification-triggering document.  Baroni never alleges that he delivered the indemnification-triggering document—the judgment of acquittal—to the Port Authority.  For all the reasons discussed above, tethering the notice requirement to

---

[10]     This approach accords with traditional principles of contract interpretation: "[e]xpress conditions must be literally performed; substantial performance will not suffice." *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009).

[11]     Tellingly, the cases that Baroni cites do not address sovereign immunity. Nor do they support his plea here, as their facts are meaningfully different.  In *Lowe v. Zarghami*, for example, the plaintiff was not aware that the defendant was a public employee—obviously not the case here.  731 A.2d 14, 18 (N.J. 1999). And in *Lebron v. Sanchez*, the court permitted substantial compliance after noting that the defendant failed to "assert noncompliance with the notice provision" until discovery was under way.  970 A.2d 399, 408 (N.J. Super Ct. App. Div. 2009) ("We conclude it is unfair for the [defendant] to raise such a technical defense at this late date.").  The Port Authority, by contrast, raised Baroni's noncompliance at the first available opportunity.

- 49 -

the event triggering the Port Authority's indemnification obligation makes sense, and the Port Authority was well within its authority to design its By-Laws accordingly.

### B. The Port Authority Did Not Waive The Requirement For Notice Under The By-Laws

Baroni next contends that the Port Authority's General Counsel somehow waived the agency's sovereign immunity himself. Putting aside whether it would even be possible for a single officer of a public agency to excuse statutory requirements for sovereign immunity waiver, Baroni alleges no facts sufficient to establish waiver.

"Waiver of a statutory notice of claim requirement occurs only when there is an express agreement that it is inapplicable or when the parties have set out detailed procedures which are plainly inconsistent with the notice of claim requirements." *Hall-Kimbrell Env't Servs. Inc. v. East Ramapo Cent. Sch. Dist.*, 580 N.Y.S.2d 564, 566 (App. Div. 1992). Nothing of the sort happened here. The best Baroni can muster is that he was told he did not need to keep requesting discretionary *advancement*. *See* JA229 ¶ 4 (Port Authority "did not agree to provide advancement of defense costs"); JA235 ¶ 24 (referencing Baroni's "request for advancement"); *id.* ("request for advancement of … legal fees in

- 50 -

connection with the federal grand jury investigation").[12] Far from an "express agreement" that Paragraph 8's requirement of delivery in connection with mandatory post-acquittal indemnification for the criminal case was satisfied, *Hall-Kimbrell*, 580 N.Y.S.2d at 566, these discretionary *advancement* requests allegedly included broad-ranging discussion of legal fees in various contexts, including "the New Jersey legislature's investigations" and "two civil suits." *See* JA234 ¶ 21. Neither the original nor the proposed amended complaint alleges anything the General Counsel told Baroni after the judgment of acquittal came down, let alone pleads the kind of "express agreement" that would be needed to waive Paragraph 8's particular delivery requirement. *Hall-Kimbrell*, 580 N.Y.S.2d at 566.[13]

---

[12]     Baroni now argues that his "requests were explicitly cast as requests *both* for advancement specifically (*i.e.*, payment of fees as incurred) and indemnity generally (payment of fees, without regard to timing)." Br. 62 n.9. Whatever way he chooses to characterize his almost decade-old conversations with the General Counsel, there can be no dispute that they were *not* about post-acquittal indemnification because Baroni had no clue, at the time, that he would ever be acquitted. Thus, there was never any "express agreement" that Paragraph 8's delivery requirement for post-acquittal indemnification was satisfied, *Hall-Kimbrell*, 580 N.Y.S.2d at 566, and accordingly no waiver.

[13]     *Morrison v. Buffalo Board of Education*, which confirms both that waivers "are 'not … lightly presumed'" and that waived contractual rights must be "'knowingly, voluntarily and intentionally abandoned,'" is inapposite on the facts. 741 F. App'x 827, 830 (2d Cir. 2018). There, "defendants hired [a teacher] knowing that she did not possess New York certification" and "twice directed her to apply for certain certificates" that "brought her into compliance with the Agreement." *Id.* At the time of the teacher's hiring, the defendants accepted performance with knowledge of the deficiency. Here, the General Counsel could

Furthermore, waiver here would require "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *United Commodities-Greece v. Fidelity Int'l Bank*, 473 N.Y.S.2d 10, 12 (App. Div. 1984), *aff'd*, 478 N.E.2d 172 (1985); *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 662 (S.D.N.Y. 2017) ("A waiver requires an intentional relinquishment of a known right, based on full information."), *aff'd*, 942 F.3d 554 (2d Cir. 2019). Baroni does not allege in any of his filings that the General Counsel *intended* to relinquish Baroni's then-hypothetical requirement to provide notice of the judgment of acquittal, nor could Baroni possibly allege as much because the General Counsel had no knowledge that Baroni would be acquitted when he undertook the conduct that Baroni now claims was waiver. Moreover, Baroni's own allegations reveal the implausibility of his argument that he mistakenly believed his duties had been discharged by something the General Counsel said years before his acquittal. He alleged in his complaint that he

_____

not have possibly waived Baroni's obligation to provide notice of post-acquittal reimbursement because it had not yet occurred when his conversations with Baroni's counsel took place. Unlike the lack of certification in *Morrison*, which the defendants knew about and accepted when the teacher was hired, the Port Authority could not know about, let alone accept, Baroni's failure to provide post-acquittal notice before it happened. Even if the Port Authority could have theoretically said with specificity, "We will reimburse your attorney's fees if and when you are acquitted," nothing in Baroni's original or proposed amended complaint plausibly asserts that the Port Authority's General Counsel actually did.

actually *did* deliver post-acquittal notice on the Port Authority; the problem is he delivered the notice too late. *See* JA28 ¶ 35 (alleging he "sent a letter to the Port Authority making a claim under Article XI of the By-Laws" on September 25, 2020). If Baroni was truly relying on waiver to excuse notice, he would have raised that argument before the district court dismissed his complaint.

## C. The Port Authority, As A Government Agency, Cannot Be Estopped From Bringing Claims Of Non-Compliance

Estoppel is equally unwarranted.

*First*, as the district court correctly noted, "'it is well settled that the Government may not be estopped on the same terms as any other litigant.'" SPA38-39 (quoting *Heckler v. Community Health Servs. of Crawford Cnty., Inc*., 467 U.S. 51, 60 (1984)). The reason is that, "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler*, 467 U.S. at 60. The rule also "stems from considerations of sovereign immunity." *Lake v. New York City Emps.' Ret. Sys*., 163 N.Y.S.3d 143, 146 (App. Div. 2022).[14] While the Supreme Court has acknowledged that there may be

---

[14] Baroni is misguided on both the facts and law when he asserts that courts can only refuse to estop government entities when they are complying "with statutory mandates." Br. 66. First, the By-Laws are themselves a product of the interstate compact creating the Port Authority, *see* 42 Stat. 174, 177, Art. 5 ("The commissioners shall, for the purpose of doing business, constitute a board and may

some instances in which the public interest in ensuring that the government "can

enforce the law free from estoppel might be outweighed by the countervailing

interest of citizens in some minimum standard of decency, honor, and reliability in

their dealing with their Government," *Heckler*, 467 U.S. at 60-61, courts have

generally agreed that, absent expectational circumstances, estoppel does not lie

against the government. *See Reich v. Valley National Bank of Ariz.*, 837 F. Supp.

1259, 1304 (S.D.N.Y. 1993). For example, the Supreme Court has approved of

lower courts "refusing to estop the Government where an eligible applicant has lost

Social Security benefits because of possibly erroneous replies to oral inquiries."

*Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (per curiam); *see also OPM v.*

---

adopt suitable by-laws for its management."). And they are broadly applicable to all employees even without explicit assent. They help the Port Authority enforce the law. Thus, they are more akin to statute than a regular contract. Second, courts do refuse to apply estoppel against the government in the contracting context— particularly when statutes, like N.Y. Unconsol. Law §7107 and N.J.S.A. §32:1- 163, speak to the allegedly waived requirement. *See, e.g.*, *Field Day, LLC v. County of Suffolk*, 799 F. Supp. 2d 186, 195 (E.D.N.Y. 2011) ("Were this a contract between private parties, such statements—assuming arguendo the presence of the other required estoppel elements—might give rise to a viable claim of estoppel. However, Riverhead is a public, not a private entity. As such, the ability of its officers and agents to saddle it with contractual obligations is statutorily circumscribed.") (citation omitted); *see also Providence Eng'g Corp. v. Downey Shipbuilding Corp.*, 294 F. 641, 659 (2d Cir. 1923) ("[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an agreement to do or cause to be done what the law does not sanction or permit."); *Diamond Phone Card, Inc. v. United States*, 206 F. Supp. 3d 766, 771 (E.D.N.Y. 2016) ("claims for estoppel cannot be entertained where public money is at stake").

*Richmond,* 496 U.S. 414, 414, 419-420 (1990) ("erroneous advice given by a Government employee to a benefits claimant cannot estop the Government from denying benefits not otherwise permitted by law").[15]  The same reasoning applies here, and the district court appropriately refused to estop the Port Authority where an officer allegedly created an impression that compliance with the By-Laws had been satisfied.

*Second*, and in any event, the facts alleged here do not remotely give rise to estoppel.  "[E]quitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's *justifiable reliance* upon the former's words or conduct."  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (emphasis added).  Even if the General Counsel had told Baroni, in the early days of his criminal case, that "all contractual preconditions had been satisfied," Br. 65, that would have—at most—applied to contractual preconditions for advancement.  There is no way Baroni could have justifiably relied on satisfying contractual

---

[15]    Baroni's citation to *Henry Boeckmann, Jr. & Associates, Inc. v. Board of Education, Hempstead Union Free School District No. 1*, 616 N.Y.S.2d 395 (App. Div. 1994) does not help him.  *Boeckmann* states that, "where a governmental subdivision acts or comports itself *wrongfully or negligently*," estoppel may apply.  *Id.* at 398 (emphasis added).  There are no allegations the Port Authority wrongfully or negligently induced Baroni's reliance in discussions with him relating to his attorneys' fees.

preconditions for an event that he had no reason to believe would take place—his acquittal. Baroni's professed reliance is also implausible because he failed to assert it when the Port Authority first raised the notice problem. Far from saying he relied on anything the Port Authority said, Baroni disputed "that it is a 'mandatory condition' of Plaintiff's recovery that Plaintiff made a timely request for indemnity under the Port Authority By-Laws." JA93. The district court properly determined that estoppel did not apply.

## IV. THE DISTRICT COURT SHOULD NOT HAVE REMANDED BARONI'S STATE-LAW CLAIMS

The district court was not required to remand Baroni's state law claims, and there is no reason for it to have done so.[16] Dismissal was premised on the Port Authority's sovereign immunity remaining intact, barring subject-matter jurisdiction in federal and state court alike. There would have been no reason for the district court to remand, only for those claims to be dismissed on the same sovereign immunity grounds in state court. *See Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020) (noting that dismissal on jurisdictional grounds is not on the

---

[16]    This argument is, in any event, waived. The Port Authority specifically argued in its motion to dismiss that, as consequence of Baroni's noncompliance with the By-Laws, "no court—*state or federal*—has subject matter-jurisdiction over his compliant." JA109 (emphasis added). Baroni never argued that a state court would have jurisdiction over his complaint, and, while asking the district court to vacate or provide relief from its judgment, he never asked the district court to remand any claims (state or federal) following dismissal. *See* JA223-313.

merits but nonetheless precludes relitigation of the precise issue decided). Instead, it is appropriate for a court to dismiss all barred claims with prejudice, which courts in this circuit do routinely. *See, e.g.*, *Shibeshi v. City Univ. of N.Y.*, 2012 WL 12884419, at *1-2 (S.D.N.Y. Mar. 1, 2012), *aff'd,* 531 F. App'x 135 (2d Cir. 2013).

## CONCLUSION

The district court's dismissal should be affirmed.

Respectfully submitted.

/s/ Peter G. Neiman
PETER G. NEIMAN
ANJAN S. SAHNI
ALAN SCHOENFELD
MARISSA M. WENZEL
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY
(212) 230-8800

September 18, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of 2d Cir. R. 32.1.

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 13,926 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/ Peter G. Neiman
PETER G. NEIMAN

September 18, 2023